FILED

2021 Jan-20 PM 02:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

1:21-CV-91-WOB-SGC

2021 JAN 20 P 12:39

U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA

MUJAHID NASIRUDDIN
P.O. BOX 1000
OTISVILLE, NY 10963                                    PLAINTIFF

-VS-

FEDERAL BUREAU OF PRISONS
U.S. DEPARTMENT OF JUSTICE
320 First Street N.W.
Washington, D.C.  20534                                DEFENDANT

## COMPLAINT

Comes the plaintiff - Mujahid Nasiruddin, "pro se", and for his cause of action, states:

1.  This action is being brought pursuant to the "Federal Tort Claims Act" (28 U.S.C. § 2671, et.seq.), for damages suffered and injuries sustained as a direct result of the deliberate indifference exhibited by the employees, agents, and servants, of the defendant - Federal Bureau of Prisons, an agency of the United States Department of Justice, United States of America.

2.  This court possesses jurisdiction under 28 USC § 1331, and §§ 2671, et seq.

3.   That on July 3, 2018, administrative claim number TRT-SER-2018-05569, was assigned to the claim submitted to the defendant - Federal Bureau of Prisons, by the plaintiff. Defendant informed the plaintiff that a response would be given within six months, i.e., by December 24, 2018 (See attached exhibit). No response was given by the defendant within the aforesaid six months, thereby permitting the institution of this action.

STATEMENT OF CLAIM

4.   That on or about June 4, 2018, at approximately 3:30 P.M., while the plaintiff was taking a shower in his unit at the FCI Talladega, in the State of Alabama, where the plaintiff was a federal prisoner, the plaintiff experienced a "pinch" in his groin area when he washed the area. The aforesaid pinch came from one of his testicles. Shortly thereafter, between 3:45 P.M., to about 4:15 P.M., severe pain commenced manifesting itself from the testicle and the plaintiff's lower abdominal area. At that time, the plaintiff was locked in his cell and unable to summon medical assisttance because there was no duress button in the cell. Thus, it was not until Corrections Officer M. Taylor cleared count and unlocked cell doors that the plaintiff could inform anyone of his distress by painfully going to Corrections

Officer Taylor's office. The pain was so intense that the plaintiff was bent over. After informing Corrections Officer Taylor of my problem, and that the pain was extreme, he contacted the medical department personnel. Corrections Officer Taylor spoke with P.A. Horne on the telephone. P.A. Horne had Corrections Officer Taylor ask the plaintiff about the severity of the pain or the amount of threshold pain. Again, the plaintiff informed that the pain was in the extreme. P.A. Horne asked if it was possible for the plaintiff to come to the medical department, unassisted. It was my response that I could only do so if someone assisted in the process. Following the aforesaid exchange, Corrections Officer Taylor finished speaking with P.A. Horne, then turned to the plaintiff and informed that P.A. Horne instructed him to direct me to report to "Sick Call" the next day. P.A. Horne's aforesaid response was devastating to the plaintiff, and exhibited total and deliberate indifference to the plaintiff's medical emergency.

Corrections Officer Taylor offered to contact the Lieutenant's Office on behalf of the plaintiff. Instead, the plaintiff elected to go with the diabetics to the medical department since that would be the fastest route, so long as someone assisted him. Corrections Officer Taylor agreed to this alternative. Upon reaching the "Pill Line" for the dia-

betics (with assistance from inmate Wilson), the plaintiff approached P.A. Horne and, again, informed of plaintiff's medical emergency and the severe pain. The plaintiff further informed P.A. Horne that the plaintiff had prior experience with an apparent identical medical emergency and that it was extremely important that the plaintiff receive immediate medical attention from qualified physicians, because, from plaintiff's prior exposure to the same type of problem, time was of the essence.

P.A.Horne was not impressed, or concerened, about the plaintiff's complaint since he directed the plaintiff to take a seat and wait until all of the diabetics had received their medications, and other inmates were given their respective medicines. That did not occur until approximately 6:30 P.M. At that time, the plaintiff, again, informed P.A. Horne of the extreme pain being suffered by the plaintiff and of the time factor. P.A. Horne merely returned to his computer and told the plaintiff that it would be another fifteen or twenty-minutes before he could examine the plaintiff since there may be some "stragglers" coming to the pill line.

The plaintiff continued to voice his concern to P.A. Horne, and that something had to be done, immediately. About ten minutes later, at approximately 6:45 P.M., P.A. Horne

closed the pill line and took the plaintiff into the medical examining room. Following a cursory examination, P.A. Horne agreed that there was a problem that was of a emergency nature, yet, P.A. Horne refused to admit to the fact that the plaintiff required immediate medical attention for the "testicular torcheno" symptoms being exhibited by the plaintiff. Again, the plaintiff strongly disagreed with P.A. Horne's assessment and warned him of the danger that the plaintiff was experiencing or confronting. Finally, P.A. Horne made contact with Dr. Lawrence, who was the physician on-call at that time. The plaintiff was present for the telephone call and overheard the conversations between P.A. Horne and Dr. Lawrence.

Dr. Lawrence instructed P.A. Horne to have the plaintiff transported to a hospital, but not by ambulance since an institution vehicle could be used. Dr. Lawrence stated that there was "no rush", or "rushing of the process". Thus, it was not until 10:30 P.M., that the plaintiff arrived at a local hospital, where intake was performed, which further delayed the process, whereas if an ambulance had been summoned, the intake process would not have been needed. Next, a sonogram was performed of the testicle, which confirmed that plaintiff was experiencing a "testicular torchen". Furthermore, the plaintiff was informed that he had waited too late and that

the testicle could not be saved. Medical personnel at the hospital then made arrangements for the plaintiff to be taken by ambulance to a hospital in Birmingham, Alabama, since the aforesaid hospital was not equipped to perform the necessary surgerical procedure. The plaintiff was then taken, by ambulance, to the Grand View Medical Center in Birmingham, Alabama, where another sonogram was performed to verify the diagnosis.

Medical personnel at the Grand View Medical Center confirmed that plaintiff's testicle had torched, and, that due to the length of time taken to seek medical attention, the testicle could not be saved, and had to be removed. Consequently, at approximately 3:30 A.AM., on June 5, 2018, surgery was performed to remove the damaged testicle. The plaintiff was then returned to the prison.

REMEDY

5.   Compensatory damages are demanded for the medical negligence and malpractice of the defendant's agents, servants and employees, which resulted in the loss of plaintiff's testicle, and the infliction of pain, anxiety, stress, sleeplessness, and the future loss of earnings, including future medical expenses, loss of consortium and the loss of ability to reproduce.

## RELIEF

6.   That, as a direct result of the deliberate indif-
ference of defendant's agents, servants and employees, the
plaintiff suffered great pain, and incurred the loss of one
of his testicles, all to his damage in the sum of Five Million
Dollars, plus interest.

WHEREFORE, the plaintiff demands Judgment against the
Defendant in the sum of Five Million Dollars, plus interest.

MUJAHID NASIRUDDIN
Reg.No. 32770-037
P.O. BOX 1000
OTISVILLE, NY 10963



*Exhibit 1*



**U.S. Department Of Justice**
Federal Bureau of Prisons

*Southeast Regional Office*

Building 2000
3800 Camp Creek Parkway S.W.
Atlanta, Georgia 30331

July 3, 2018

**RECEIVED**

JUL 1 1 2018

WARDEN'S OFFICE
FCI TALLADEGA, AL

Mujahid Nasiruddin
Reg. No. 32770-037
FCI TDG
PO Box 2000
Talladega, AL  35160

Re:     Administrative Claim #TRT-SER-2018-05569

Dear Claimant:

This acknowledges receipt of an administrative tort claim you are submitting for filing wherein you allege personal injury, damage, or death.  The claim was accepted for filing on June 25, 2018, by the agency involved in your personal injury/property loss.  The Government is afforded six months from the date the claim is accepted for filing to make a final disposition regarding your claim.  Therefore, an answer to your claim will be mailed on or before December 24, 2018.  It is your responsibility to keep this office apprised of your present address.

If not included with your claim, you will need to provide a complete copy of all records **(do not send originals as they will not be returned)** in your possession relating to this claim as well as a detailed description of the events surrounding the alleged loss.  You are advised that failure to provide this information may result in delay in processing, or prejudice the outcome of your claim.

Sincerely,

Craig Simmons
Regional Counsel

*Exhibit 2*

MUJAHID NASIRUDDIN # 32770-037
UNITED STATES PENITENTIARY TERRE HAUTE
P.O. BOX 33
TERRE HAUTE, IN 47808

JANUARY 26, 2019

FEDERAL BUREAU OF PRISONS
SOUTHEAST REGIONAL OFFICE
BLDG. # 2000
3800 CAMP CREEK PRKWY. S.W.
ATLANTA, GA 30331


RE: ADMINISTRATIVE REMEDY # TRT-SERT-2018-05569


Dear Staff;

    Please accept the present as a formal "notice" of my current address change, as it relates to the aforementioned "small claims" form submitted on June 25, 2018.
    Accordingly, please accept this as a formal notice of my new address.

Respectfully submitted,

Mujahid Nasiruddin