# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| MUJAHID NASIRUDDIN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 1:21-cv-00091-MHH-SGC |
| WARDEN ROMERO, *et al.*, | ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

On February 26, 2024, the magistrate judge entered a report in which she recommended that the Court dismiss Mr. Nasiruddin's claims against Warden Romero for want of prosecution and grant the remaining defendants' motions for summary judgment because Mr. Nasiruddin did not exhaust his administrative remedies before filing his claim under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), and he did not present sufficient evidence to rebut the expert evidence that the defendants presented in support of their motion for summary judgment on Mr. Nasiruddin's claims under the Federal Tort Claims Act. (Doc. 54). In her report, the magistrate judge advised the parties of their right to file specific written objections within 14 days. (Doc. 54). To date, the Court has not received objections.

When a magistrate judge issues a report and recommendation regarding a dispositive motion, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). A district judge must "make a *de novo* determination of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to."). A district court's obligation to "'make a de novo *determination* of those portions of the report or specified proposed findings or recommendations to which objection is made,'" 447 U.S. at 673 (quoting 28 U.S.C. § 636(b)(1)), requires a district judge to "'give *fresh consideration* to those issues to which specific objection has been made by a party,'" 447 U.S. at 675 (quoting House Report No. 94-1609, p. 3 (1976)). *United States v. Raddatz*, 447 U.S. 667 (1980) (emphasis in *Raddatz*). Although § 636(b)(1) "does not require the [district] judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard." *Thomas v. Arn*, 474 U.S. 140, 154 (1985). That is because for dispositive matters, like summary judgment motions, "the ultimate adjudicatory determination is reserved to the district judge." *Raddatz*, 447 U.S. at 675.

Here, having reviewed the magistrate judge's report and the record in this case, the Court adopts the magistrate judge's recommendation for dismissal without prejudice of Mr. Nasiruddin's claims against Warden Romero for want of prosecution and dismissal without prejudice of Mr. Nasiruddin's claim against the remaining defendants under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), because Mr. Nasiruddin did not exhaust his administrative remedies before filing his *Bivens* claim. (Doc. 54, pp. 10-12).

The Court is not prepared to accept the portion of the report concerning Mr. Nasiruddin's FTCA claim on the current record. Mr. Nasiruddin's injury in this case is undisputed; he lost his left testicle because he experienced testicular torsion, and the testicle was not viable by the time he saw a urologist who may have been able to save the testicle. The law that the magistrate judge explained in her report is sound: to prevail on his FTCA claim, Mr. Nasiruddin must establish a claim under the Alabama Medical Liability Act—the AMLA, and to prove a claim under the AMLA, a plaintiff ordinarily must present expert evidence. (Doc. 54, pp. 12-13). The magistrate judge recommended that the Court grant the defendants' motion for summary judgment on Mr. Nasiruddin's FTCA claim because Mr. Nasiruddin did not rebut the defendants' expert's opinion "that the timeframe of diagnosis and transportation was not unreasonable and within the standard of care" and that even if Mr. Nasiruddin's testicular torsion had been diagnosed and he had been

transported to an outside care facility as quickly as possible, "it was more likely than not that he would have lost his left testicle." (Doc. 54, p. 14).

As noted, Mr. Nasiruddin has not objected to the magistrate judge's analysis of the FTCA claim, but from the outset, Mr. Nasiruddin explained that he "ha[d] little or no resources to procure an expert witness"; that he understood that Alabama law generally required expert testimony to establish the applicable standard of care, though there is an exception for matters within "common knowledge"; and that he is "unskilled in law." (Doc. 6, p. 2). In his *ifp* application, Mr. Nasiruddin stated that he had not worked in 24 years; that family members sent money when they could; and that because of COVID, his family was in need, so he had returned most of what they had sent and was in "dire straights just to keep up with [his] general needs." (Doc. 3, pp. 1-2). In the six months preceding this action, the highest average balance in Mr. Nasiruddin's jail account was $30.00. (Doc. 3, p. 3). The defendants retained an expert in urology who practices at the University of Tennessee Medical Center. (Doc. 25-6, p. 2). The expert charged the defendants $600 per hour for case review. (Doc. 25-6, p. 3). Thus, the record substantiates Mr. Nasiruddin's representation that he cannot afford to hire an expert.

Mr. Nasiruddin needs an expert in this case not only to develop evidence to carry his burden but also to determine whether the opinion the defendants' expert provided is subject to a challenge under Federal Rule of Evidence 702 and *Daubert*

4

*v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  The defendants' expert, Dr. Hatcher, based his opinion on case studies of pediatric patients; Mr. Nasiruddin was 51 when he lost his left testicle.  (Doc. 25-6, p. 8).  Dr. Hatcher based his opinion on a torsion onset time that is inconsistent with the time Mr. Nasiruddin reported.  Dr. Hatcher credited an earlier onset time because he found that later times were reported by individuals who "had an interest in the legal outcome of this case."  (Doc. 25-6, p. 8).  Those individuals were Mr. Nasiruddin and the urologist who examined him at Grandview Medical Center.  (Doc. 25-6, p. 8).  Another expert might have a different view of the torsion onset time.  Dr. Hatcher acknowledges that with a later torsion onset time, Mr. Nasiruddin may have had a 79.3% salvage rate.  (Doc. 25-6, p. 10).

   Dr. Hatcher offered an opinion regarding the fastest means of transportation and the fastest route from FCI-Talladega to the Coosa Valley Medical Center and from Coosa Valley to Grandview Medical Center per "Google."  (Doc. 25-6, p. 9).  Dr. Hatcher opined:  "[a]lthough quicker patient movement times would be preferrable and ideal, the actual movement times in Mr. Nasiruddin's circumstances are similar to those which are observed in emergency room transfer settings and are

within the standard of care." (Doc. 25-6, p. 9). The defendants have not established Dr. Hatcher's expertise in medical transportation.[1]

Dr. Hatcher's opinion about the time at which Mr. Nasiruddin experienced testicular infarction rests on mathematical calculation (based on pediatric data) that another expert might see differently. (Doc. 25-6, pp. 10-11). Another expert might have questions about Dr. Hatcher's methodology.

A district court is the gatekeeper for expert evidence. *Daubert*, 509 U.S. at 589. On the record before it, the Court cannot tell whether Dr. Hatcher's opinion is reliable or admissible.[2] The Court cannot make this assessment until Mr. Nasiruddin

---

[1] The Court has found nothing in the record that indicates that Dr. Hatcher is an emergency room physician or has other specialized experience that would qualify him to offer opinions about emergency transportation times.

[2] The following is a helpful summary of a district court's role as a gatekeeper for expert evidence:

> As the Supreme Court explained in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, Rule 702 imposes a duty on trial courts to act as "gatekeepers" to ensure that speculative and unreliable opinions do not reach the jury. Acting as a gatekeeper, the trial court must make certain that expert witnesses employ in the courtroom the "same level of intellectual rigor that characterizes the practice of an expert in the relevant field." The court's gatekeeping role is especially significant, since "the expert's opinion can be both powerful and quite misleading because of the difficulty in evaluating it."
>
> To fulfill its role, the trial court must determine whether the expert has the requisite qualifications to offer his or her opinions. The trial court must also "'conduct an exacting analysis[] of the foundations of expert opinions to ensure they meet the standards for admissibility under Rule 702." Finally, the court must ensure the relevancy of expert testimony, meaning that it must determine whether the testimony will assist the trier of fact. In undertaking this analysis, the court must remember that the party offering the expert opinions has the burden of proof by a preponderance of the evidence.

has the assistance of an attorney who can review the defendants' evidence and decide whether Mr. Nasiruddin may challenge or refute Dr. Hatcher's expert opinions, with or without an expert of his own.

Under 28 U.S.C. § 1915(e)(1), a district court "may request an attorney to represent any person unable to afford counsel." *Burgess v. Bradshaw*, 626 Fed. Appx. 257, 259 (11th Cir. 2015). A district court may appoint counsel under exceptional circumstances, including when the facts and legal issues are "so novel and complex as to require the assistance of a trained practitioner." *Burgess*, 626 Fed. Appx. at 259 (citing *Kilgo v. Ricks,* 983 F.2d 189, 193 (11th Cir. 1993)). "The key is whether the *pro se* litigant needs assistance presenting the essential merits of his position to the court." *Burgess*, 626 Fed. Appx. at 259 (citing *Kilgo,* 983 F.2d at

---

The court performs its gatekeeping role consistent with Rule 104(a), which commits preliminary evidentiary questions to the court's decision and which further empowers courts in answering these questions to rely on evidence without being constrained by the rules of evidence. In sum, in acting as a gatekeeper, the court must keep "unreliable and irrelevant information from the jury because of its inability to assist in factual determinations, its potential to create confusion, and its lack of probative value." Although *Daubert* involved scientific experts, the Supreme Court has made it clear that the strictures of Rule 702 and *Daubert* apply with equal force to non-scientific expert witnesses. Also, in all cases the proponent of the expert witness bears the burden of establishing that the expert's testimony satisfies the qualification, reliability, and helpfulness requirements of Rule 702 and *Daubert.* Finally, "any step that renders the analysis unreliable renders the expert's testimony inadmissible."

*Stoner v.* Fye, 2017 WL 1199742, *2-3 (M.D. Ga. Mar. 31, 2017) (footnotes containing citations for internal quotes omitted). These expert standards apply at the summary judgment stage of proceedings. *Oliver v. Orange Cnty, Fla.*, 456 Fed. Appx. 815 (11th Cir. 2012); *House v. DePuy Synthes Sales, Inc.*, 2022 WL 1749201 (11th Cir. May 31, 2022).

193). "The following factors determine whether exceptional circumstances exist: (1) the type and complexity of the case; (2) whether the litigant is capable of adequately presenting his case; (3) whether the litigant is in a position adequately to investigate the case; and (4) whether the evidence will consist in large part of conflicting testimony so as to require skill in the presentation of evidence and in cross-examination." *Burgess*, 626 Fed. Appx. at 259. As the discussion above illustrates, Mr. Nasiruddin satisfies the factors for appointment of counsel on the record in this case.

Accordingly, with respect to Mr. Nasiruddin's FTCA claims, **no later than April 30, 2024, Mr. Nasiruddin shall file a notice in writing indicating whether he wishes to continue to pursue his FTCA claim**. If Mr. Nasiruddin does not file a notice or a request for additional time by April 30, 2024, the Court will dismiss Mr. Nasiruddin's FTCA claims for failure to prosecute. If Mr. Nasiruddin indicates that he wishes to pursue his FTCA claims, then the Court will appoint an attorney to represent Mr. Nasiruddin at the summary judgment stage. The Court cautions Mr. Nasiruddin that an attorney may review the summary judgment evidence and conclude that there is no basis to challenge the defendants' evidence. Should an attorney believe that Mr. Nasiruddin needs to retain an expert, the attorney shall present a request to the Court for permission to retain an expert and shall request an appropriate scheduling order.

The Court dismisses Mr. Nasiruddin's claims against Warden Romero without prejudice for failure to prosecute. The Clerk shall please terminate Warden Romero as a party to this action. The Court dismisses Mr. Nasiruddin's *Bivens* claims against the remaining defendants without prejudice for failure to exhaust administrative remedies.

**DONE** and **ORDERED** this April 9, 2024.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE